UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Austin Tepp,<br><br>      Plaintiff,<br><br>  v.<br><br>Portland Terminal Railroad Company, doing business as Union Pacific Railroad Company,<br><br>      Defendant. | Case No. 3:20-cv-50466<br><br>Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Austin Tepp brings this negligence action under Illinois law against Union Pacific Railroad Company,[1] alleging that one of its employees negligently caused him to collide with a train. Before the Court is Union Pacific's motion for summary judgment. For the following reasons, the motion is granted in part and denied in part.

**I. Background**

On November 30, 2018, around 10:30pm, Austin Tepp collided with a Union Pacific train. Defs.' 56.1 (SOF) ¶ 27; *see* Dkt. 75, Ex. 3 at 91. The collision occurred

---

[1] Union Pacific concedes in its memorandum that it is the proper defendant, not the Portland Terminal Railroad Company (one of its partly-owned subsidiaries). Dkt. 77 at 1. It was Union Pacific that waived service of the complaint, Dkt. 10, and it does not raise this seeming misnomer as a defense or reason for relief, so the Court will not pursue the matter further.

1

after he had left the Chrysler plant in Belvidere, Illinois, where he was employed, while going home on a break. SOF ¶ 10.

As he tells it, he came upon the railroad crossing while the signal was flashing and its bell was ringing. *Id.* ¶ 17. He says he could not see the train approaching even though the night was clear, *id.* ¶ 9, because he says it had no reflectors or lights, and there was a building obstructing his view in the direction from which it approached. *Id.* ¶ 16; *see* Dkt. 75, Ex. 3 at 64, 111. He says he didn't hear it either because it did not sound its horn, Dkt. 75, Ex. 3 at 102, and it was only moving at ten miles per hour as it tried to "shove," or back into, the Chrysler plant, SOF ¶ 20.

He says that he slowed down as he came up to the crossing because he saw that the signal was activated, and because there was a man, wearing a reflective vest, on the side of the road. Dkt. 75, Ex. 3 at 66-67. He reports that he entered the crossing all the same because the man in the reflective vest made some sort of up-and-down motion with his lantern that Tepp interpreted as permission to cross. SOF ¶¶ 18-19; Dkt. 75, Ex. 3 at 100. He says that the man (a Union Pacific flagman, SOF ¶ 16) had made a similar motion to a car in front of him, and that car safely passed through the crossing. Dkt. 75, Ex. 3 at 186-187. According to Tepp, he briefly looked left and right before entering, but very shortly thereafter collided with the train in the middle of the crossing. *Id.* at 71; SOF ¶¶ 26-27.

## II. Legal Standard

A party is entitled to summary judgment when it demonstrates that there is no genuine dispute as to any material fact and judgment is proper as a matter of law. Fed R. Civ. P. 56. A fact is material when it could affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine when it could lead a reasonable jury to return a verdict in favor of the non-moving party. *Id.* The Court must view the record in the light most favorable to the non-moving party and draw all reasonable inferences—and only reasonable inferences, *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins.*, 994 F.3d 869, 876 (7th Cir. 2021)—in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Smith v. Crounse Corp.*, 72 F.4th 799, 804 (7th Cir. 2023).

### III. Analysis

Tepp presents two theories of negligence (not a single theory, as Union Pacific argues in its memorandum). Dkt. 1 ¶ 20; Dkt. 77 at 1.

The first—that Union Pacific employed "inadequate measures" to warn him of the train or to impede his progress into the crossing, *see* Dkt. 1 ¶ 20—cannot proceed, because the record shows that Union Pacific has not breached its duty under Illinois law. To sustain an Illinois negligence action of course requires a showing "that the defendant owed a duty, that the defendant breached that duty, and that defendant's breach was the proximate cause of injury to the plaintiff." *Bell v. Hutsell*, 955 N.E.2d 1099, 1104 (Ill. 2011). Illinois law imposes a duty on railroads to provide "adequate warning to motorists that a train is approaching" a railroad crossing. *Sheahan v. Ne. Ill. Reg'l Commuter R. Corp.*, 212 Ill. App. 3d 732, 735

3

(1991). Illinois law also provides, however, that when a crossing's design has been approved by the Illinois Commerce Commission (ICC), such approval creates a conclusive presumption that whatever warning devices exist at the crossing give adequate and appropriate warning, so long as they function properly. *Espinoza v. Elgin, Joliet & E. Ry. Co.*, 165 Ill. 2d 107, 124 (1995). It is undisputed that the ICC approved of the relevant crossing's design, and there is no allegation that any warning device was malfunctioning. SOF ¶ 7. This theory of negligence therefore must fail, because as a matter of law, Tepp cannot show that Union Pacific breached any duty.

Tepp also presents a second theory of negligence—that the flagman "negligently directed traffic through the crossing." Dkt. 1 ¶ 20; Dkt. 94 at 3-7. Union Pacific is not entitled to summary judgment on this theory.

The ICC's judgment as to the adequacy of the warning measures employed at the crossing does not dispose of this claim. Its thrust is not that Union Pacific ought to have employed any particular warning measure, but that having affirmatively undertaken a measure—namely, setting a flagman with a lantern by the side of the road—they were required to have the flagman discharge that responsibility with reasonable care, so as not to induce someone to cross when it was not safe to do so.

Flagmen have become outmoded, no longer customarily employed to direct traffic at railroad crossings, having been in most cases replaced by artificial signals. Old Illinois authority, although not binding,[2] persuasively suggests that drivers

---

[2] "Appellate opinions before 1935 have no binding force on Illinois courts." *People v. Glisson*, 202 Ill. 2d 499, 506 n.1 (2002).

have "a right to rely" on flagmen to give "correct signals that would be understood by the ordinary person"; if a flagman fails to give some "unequivocal sign" that would be so understood, he has breached his duty and is therefore liable if his misleading signs result in injury. *Deheave v. Hines*, 217 Ill. App. 427, 433-34 (Ill. App. Ct. 1920). No case presented by Union Pacific, nor independently discovered in the Illinois reports by the Court, deals with the issue of a conflict between a flagman and an artificial signal; nothing suggesting that, as a matter of law, if there is such a conflict, the activation of the artificial signal precludes a finding of negligence on the part of the railroad if it also employs a flagman who gives misleading signs to drivers.

If that is so, then all that remain are quintessential jury questions of reasonableness and fact: whether the signal the flagman gave would have indicated to a reasonable person that it was safe to cross;[3] whether a reasonable person, seeing such a signal, would nevertheless have forborne from entering the crossing because the artificial signal was active; whether Tepp was attentive or distracted,

---

[3] *Deheave*, the old Illinois case on flagmen, amply illustrates the impropriety of deciding the issues in this case on summary judgment. There, the appellate court, inspecting the record from the trial court, was confronted with testimony like this from witnesses to the crash allegedly caused by a negligent flagman: "'He pulled the flag like this,' then the word 'indicating" has been inserted in the record . . . . 'He made the sign like this, you know (illustrating)' . . . . 'He made a sign to come along like that (illustrating)' . . . . 'He was standing there and gave the sign like that (illustrating)' . . . . 'Just motioned like that (illustrating).'" *Deheave*, 217 Ill. App. at 431-32 (Ill. App. Ct. 1920). The court concluded that it provided a "most excellent illustration of the rule that those who see the witnesses and hear them testify are in a better position to weigh their testimony than those who read the record of such testimony." *Id.* at 432. A similar principle counsels against the entry of summary judgment based on the paper record in this case; what exactly the flagman did and how it would have been received by a reasonable person under the circumstances are the province of the jury after having seen live testimony.

as the flagman alleges, *see* Dkt. 75, Ex. 2 at 67 (recounting that Tepp was "not paying attention" and "looking down" as he came upon the crossing); and so on.

Union Pacific's arguments to the contrary do not disturb this conclusion. Because the crux of the claim is not that the warning devices were inadequate, it is affected neither by the favorable duty presumption gained by ICC approval under state law nor by federal preemption. Dkt. 77 at 3-5; *see Norfolk Southern Ry. v. Shanklin*, 529 U.S. 344, 352-54 (2000) (holding that when states use federal funds to install warning devices at railroad crossings—as is true here, SOF ¶ 6—state tort claims whose gravamen is the adequacy of such devices are preempted).

The cases Union Pacific cites in favor of the proposition that when a train "occupies a crossing, it owes no further duty to warn a plaintiff absent special circumstances," as an obvious danger for which no warning is required, are inapposite. Dkt. 77 at 5-6. Those cases dealt with the standing-car rule, where a train *stopped* in the middle of a crossing is held to be an obvious danger. Tepp's claim is that the danger posed by Union Pacific's slow-moving train was not obvious because he neither saw nor heard it before he was induced to enter the crossing by the flagman.[4] But even if no warning were required under the standing-car rule, Tepp alleges that the railroad undertook affirmative action that incorrectly warranted to him that it was safe to cross. Illinois courts recognize the general

---

[4] Even assuming the doctrine applies in the first instance, Illinois law recognizes that "malfunctioning warning lights which erroneously indicated that the crossing was clear" are a special circumstance that would not relieve the railroad of its ordinary duty to warn. This seems sufficient warrant to conclude by analogy that the standing-car rule is inapplicable here, if a negligent flagman stands in for a malfunctioning signal. *Dunn v. Baltimore & Ohio R. Co.*, 537 N.E.2d 738, 741 (Ill. 1989) (citation omitted).

principle of tort law, enunciated by Judge Cardozo, that a landowner "who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *See, e.g., Jordan v. Savage*, 232 N.E.2d 580, 585 (Ill. App. Ct. 1967) (quoting *Glanzer v. Shepard*, 135 N.E. 275, 276 (N.Y. 1922)). Even if Union Pacific had no duty to post a flagman, having done so, it might still be liable if its employee acted negligently. The standing-car rule therefore does not compel summary judgment in favor of the railroad, as Tepp's claim would lie independent of its applicability here.[5]

The cases Union Pacific cites in favor of the proposition that proximate cause can be decided as a matter of law in this case are likewise unavailing, because they involved collisions that occurred despite the existence of warning devices that functioned normally and gave unambiguous signs of danger. Dkt. 77 at 8-9. Neither speaks to the unusual factual circumstance involved in this case, where a flagman allegedly gave a sign that it was safe to cross while the artificial warning system was also functioning. Viewing the facts in the light most favorable to Tepp, it is reasonable to infer that the flagman gave such a sign, especially because another car crossed in front of him after the flagman allegedly gave the same signal to that car as he gave to Tepp. Dkt. 75, Ex. 3 at 186-87. It is not so improbable that a reasonable person would have acted as Tepp did. Suppose the signal had been malfunctioning, and the railroad company had dispatched a flagman to indicate to

---

[5] For the same reason, Union Pacific's argument that the approaching train was an "open and obvious danger" for which no warning is required, Dkt. 77 at 6-8, cannot dispose of this claim, both because its obviousness is a disputed question of fact, and because it does not involve a failure to warn, but an affirmative warrant that it was safe to cross.

7

passing traffic that it was safe to cross; or, as Tepp says he believed, that work being done on power lines that had set off the signal. *Id.* at 99. A reasonable person might very well have concluded under the circumstances that it was safe to cross, irrespective of the artificial signal, and therefore that the railroad proximately caused his injuries, because the flagman's signal indicated to a reasonable person that he was entitled to proceed.

Union Pacific's final argument is that because Tepp did not act in conformity with the Illinois Vehicle Code, which requires that a driver stop "within 50 but not less than 15 feet from the nearest rail of the railroad" when a "clearly visible electric or mechanical signal device gives warning of the immediate approach" of a train, or a "human flagman gives or continues to give a signal of the approach or passage" of a train, Union Pacific did not proximately cause his injuries. 625 ILCS 5/11-1201. The statute, however, obviously does not make clear what a driver ought to do when a mechanical signal gives a warning, yet a human flagman indicates that the coast is clear. It may be that a reasonable person would have stopped; but the lacuna in the statute, at least, prevents the Court from determining the issue as a matter of law: it is instead a question of reasonableness best left to a jury.[6]

## IV. Conclusion

---

[6] Further, although Union Pacific did not make any argument beyond the statute's relation to proximate causation, even if the statute mandated that he stop, his violation was not negligence per se under Illinois law, but only prima facie evidence of negligence, *see Grass v. Hill*, 418 N.E.2d 1133, 1137 (Ill. App. Ct. 1981), and at any rate there is no doctrine of contributory negligence in Illinois that would entitle Union Pacific to summary judgment. *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 593 N.E.2d 522, 527 (Ill. 1992) ("[T]his State [has] abandoned the contributory negligence defense . . . .").

For the foregoing reasons, Union Pacific's motion for summary judgment is granted in part and denied in part.

Date: April 5, 2024

Honorable Iain D. Johnston
United States District Judge