## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| Austin Tepp, | |
| Plaintiff, | Case No.: 20-cv-50466 |
| v. | Judge Iain D. Johnston |
| Portland Terminal Railroad Co., | |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER

On July 7, 2025, the Court warned Tepp's counsel, Cynthia Koroll, that it would dismiss this case on July 31 under Rule 41(b) if a final pretrial order wasn't filed. It underscored that "[n]o further extensions will be allowed." Dkt. 134. Unable to complete the assignment, Koroll, despite the Court's admonition, sought another extension. The Court, however, must honor its earlier warning. For the following reasons, it denies Koroll's motion for extension of time and it grants Defendants' motion to dismiss under Rule 41(b).[1]

### Background

Tepp sued Portland Terminal Railroad Company ("Union Pacific") for injuries he sustained when a train collided with his vehicle. *See generally* dkt. 104. But this decision isn't about the collision or the merits of Tepp's claims; it's about his counsel

---

[1] This decision involves two separate, but in this case intertwined, Federal Rules of Civil Procedure: Whether the case should be dismissed under Rule 41(b) and whether Tepp is entitled to another extension under Rule 16(b).

and her repeated failures to abide by the Court's deadlines. Only one reasonable inference can be drawn from this Record:

- On April 14, 2021, the Court directed the Parties to file a joint proposed case management order by April 28. Dkt. 17. Union Pacific attempted to meet that deadline. *See* dkts. 20–21. According to its signed filing and exhibits, Union Pacific tried to contact Koroll at least four times via email and phone. *Id.* On April 28—the deadline date—Koroll responded at 2:51 p.m., "I apologize. I have been in depositions all day. I am not certain if I will complete them by *your* deadline." Dkt. 21. Union Pacific unilaterally filed a proposed order, which the Court rejected. The Court gave the Parties until May 6 to file a joint proposed order. Dkt. 22. The Parties missed that deadline.[2] The Court extended the deadline to May 10, which the Parties ultimately complied with. Dkt. 26.

- The Court ordered the Parties to submit a joint status report by September 13, 2021. Dkt. 29. The Parties missed the deadline, prompting the Court to *sua sponte* extend it to September 24. Dkt. 30. The Parties missed that one, too. On September 27, Union Pacific unilaterally filed a status report. Again, Union Pacific documented its repeated efforts to reach Koroll before and after the September 13 deadline. Dkt. 31. In a September 13 deadline-day email, Koroll wrote that she "can turn [her] attention to [the status report] at 1pm

---

[2] The Court uses "the Parties" when neither one filed anything on the due date, even though the Defendants—and the Record as a whole—show that Koroll was responsible.

today." Union Pacific, however, didn't subsequently hear anything from her. *Id.*

- The Court scheduled a telephonic status conference for October 4, 2022. Dkt. 55. Without any notice, Koroll failed to appear. Dkt. 56.

- On October 11, 2022, Koroll made an oral motion to extend fact discovery until December 2. The Court granted the extension over Union Pacific's objection. Dkt. 57.

- On December 6, 2022—the deadline date—Koroll again made an oral motion to extend fact discovery until February 23, 2023. Again the Court granted the extension over Union Pacific's objection. Dkt. 58. It advised that "this will be the final extension." *Id.*

- On February 23, 2023, the Court ordered Koroll to make a formal settlement demand by March 16. Dkt. 61. Almost two weeks after the deadline passed, on March 28, Koroll made an oral motion for an extension. Union Pacific wasn't opposed, and the Court granted it. Dkt. 62.

- On May 2, 2023, Koroll informed the Court that a settlement conference wouldn't be productive. Dkt. 63. Koroll requested time to meet with a private mediator. Over Union Pacific's objection, the Court granted Koroll until May 25 to meet with one. *Id.*

- A telephonic status conference was scheduled for May 25, 2023. At 4:50 p.m. on May 24, the Court received an email from Koroll indicating that she was now due in state court at 9:00 a.m. and would not be able to attend Court at

3

9:15 a.m., as scheduled. The Court (and defense counsel) accommodated Koroll and moved the conference to 10:00 a.m. The case was called at 10:06 a.m., and Koroll failed to appear. Dkt. 64.

- On June 2, 2023, Union Pacific unilaterally filed a status report, again documenting its unsuccessful efforts to reach Koroll and comply with the deadline. Dkt. 65.

- Tepp's response to Union Pacific's motion for summary judgment was due on September 13, 2023. Dkt. 73. Koroll, without notice, missed that deadline. The Court, *sua sponte*, extended the deadline to October 10. Dkt. 78. Koroll was "warned if no response is filed, the Court will rule on Defendant's motion without the benefit of a response." Dkt. 78. Again without notice, Koroll missed the extended deadline. On October 18, due to various illnesses, she sought a "final request" for an extension until October 23. Dkt. 79. The Court granted the request. *Id*.

- On January 31, 2024—*months after the "final request" for an extension and receiving nothing from Koroll*—the Court ordered her to show cause why the Court shouldn't dismiss the case under Rule 41(b). Dkt. 83. On February 7, Koroll "implore[d]" the Court for another ten-day extension. Dkt. 84. She cited medical issues and the fact that she and "her legal assistant were working remotely at two different locations" and that Koroll failed to properly calendar the October 23 deadline. *Id*. The Court granted Koroll's request, giving her until February 13 to file the response. Dkt. 86.

- On February 14, 2024, Koroll said that she "could not electronically file" the response to Defendant's statement of material facts and memorandum of law by the February 13 deadline. Koroll was able to file the formal response (i.e. without the memorandum and 56.1 statement) on February 13 "at or about 10 p.m." She filed those documents on February 14 and requested a retroactive twelve-hour extension. Dkt. 96. She told the Court that she would update it with Defendant's position regarding her request. *Id.* Hearing nothing, on February 23 the Court directed Koroll to provide an update. Dkt. 98. Over Defendant's objection, the Court granted Koroll's request for a retroactive extension. Dkt. 101.

- On May 7, 2024, the Court directed Koroll to submit an initial settlement letter by June 5. Dkt. 107. Koroll missed that deadline, and the Court *sua sponte* extended it until June 12. Dkt. 108. Without notice, Koroll also missed that extended deadline. Dkt. 109. On June 14, Koroll's legal assistant told the Court she needed until June 17. *Id.* On June 21, receiving nothing, the Court gave Koroll "until the close of business" on that day to submit the settlement correspondence. Dkt. 109. Koroll missed that thrice-extended deadline, and the Court struck the settlement conference. Dkt. 110.

- The Court instructed the Parties to file a joint status report by September 16, 2024. Dkt. 112. That day, Defendant unilaterally filed a report, again noting its unsuccessful efforts to communicate with Koroll. Dkt. 113.

- On February 19, 2025, Koroll made an oral motion for extension of time to depose an expert. Dkt. 122. The Court granted it over Defendant's objection. *Id.*

- On April 3, 2025, the Court instructed Koroll to submit a renewed settlement demand by April 10. Dkt. 125. Koroll failed to do so. The Court also instructed the Parties to file a joint status report by April 25. Only Defendants filed one. Dkt. 126.

- The Parties were instructed to file a final pretrial order by June 24, 2025. Dkt. 125. The Court didn't receive one. On July 7, 2025, the Court warned Koroll that it would dismiss this case on July 31 under Rule 41(b) if a final pretrial order wasn't filed. It stressed that "[n]o further extensions will be allowed." Dkt. 134. On July 31, Defendants again highlighted its unsuccessful efforts to communicate with Koroll. Dkt. 135. Later that day—i.e. the deadline date—Koroll said she only needed another seven days, but asked for twenty-one to accommodate Defendants. She attributed the delay to medical and caseload issues. *See* dkt. 136.

Defendant, for its part, has also sought a couple of extensions: On January 3, 2025, four days *ahead* of a deadline, Defendant asked for and the Court granted a fourteen-day extension. Dkt. 119. And on June 20, 2025, four days *before* the deadline, Defendants requested and the Court granted one-week extension. Dkt. 132.

This isn't Koroll's first deadline-missing rodeo.[3]  In *Poska v. Machacek*, she came before this Court and repeatedly sought extensions, each time after they had already passed.  *See* ECF No. 3:17-cv-50313, dkt. 39 (a week after deadline passed); *id*. dkt. 42 (a second request, five days after the extended deadline passed); *id*. dkt. 45 (a third request, *twenty days* after the twice-extended deadline passed).  She attributed the delays to travel, *id*. dkt. 39, "illness and an extremely demanding caseload," *id*. dkt. 43, and "inadvertently" calendaring the deadline on the wrong date as well as a family emergency, *id*. dkt. 45.  Koroll finally complied with the deadline, but only after the Court warned that, "**There will be no further extensions.**" *Id*. dkt. 47 (bold in original).  In *Am. Fam. Mut. Ins. Co. v. Koroll*, the Court recommended default judgment against Koroll, herself, for twice failing to appear.  ECF No. 3:17-cv-50052 (N.D. Ill. 2017), dkt. 30.  And, way back in 2008, the Seventh Circuit attributed a two-year litigation delay in-part to Koroll's "numerous motions for extensions of discovery deadlines." *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 638 (7th Cir. 2008).

**Analysis**

First, some thoughts: The Court remains "shocked as to how cavalierly some members of the bar take deadlines," treating them as "mere suggestions" like a waiter's recommendation.  *McCann v. Cullinan*, No. 11-cv-50125, 2015 U.S. Dist. LEXIS 91362, at *5 (N.D. Ill. July 14, 2015).  That's a problem.  When the Court

---

[3] The Court may take judicial notice of public filings in other cases. *See Guaranty Bank v. Chubb Corp.*, 538 F.3d 587, 591 (7th Cir. 2008); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997).  The Court would rule the same way without these examples.

enters a case management order under Federal Rules of Civil Procedure 16, "it is not spit balling ideas around a conference table."  Instead, with the parties' substantial input, the Court is imposing binding deadlines so that a case may properly progress. And not only *may* a court enforce deadlines, they often *must*. *Raymond v. Ameritech Corp.*, 442 F.3d 600,605 (7th Cir. 2006); *Spears v. City of Indianapolis*, 74 F.3d 153, 157–58 (7th Cir. 1996) ("A good judge sets deadlines, and the judge has the right to assume that deadlines will be honored.  The flow of cases through a busy district court is aided, not hindered, by adherence to deadlines.").  In other words, "[i]n the legal practice, deadlines matter."  *Postle v. Bath & Body Works, LLC*, No. 13-cv-50374, 2015 U.S. Dist. LEXIS 15372, at *1 (N.D. Ill. Feb. 9, 2015).  And if it doesn't enforce its deadlines in egregious cases, what will it tell other litigants who commit more trivial infractions?  If a case can drag on for five years, slugging through innumerable delays will (should?) any litigant take scheduling orders seriously?

This Court has long understood that deadlines, on occasion, "need to be adjusted for a variety of valid reasons, including but not limited to, illness, mishaps, electronic discovery snags, [and] true emergencies."  *McCann*, 2015 U.S. Dist. LEXIS 91362, at *5.  Recognizing that life happens, the Court will, in some cases, even forgive careless mistakes.  But there are limits.  Koroll's record in this case exemplifies the behavior that a court—even an understanding, sympathetic one— simply can't tolerate. The Court doesn't doubt that Koroll has experienced difficulties in her personal or professional life over the past years.  But more than missing deadlines, Koroll has repeatedly failed to take the "most basic step" of notifying the

Court before they passed, often requesting extensions weeks later. *Ammons-Lewis v. Met. Water Reclamation Dist. Of Greater Chi.*, No. 11-cv-6920, 2012 U.S. Dist. LEXIS 170976, *5 (N.D. Ill. Nov. 30, 2012). Only "special emergencies" ever excuse such failures. *See Johnson v. Gudmundsson*, 35 F.3d 1104, 1111 (7th Cir. 1994). To protect its docket and resources, the Parties, and the litigation process, the Court must honor its deadlines.

***

### A.    Rule 41(b)

A dismissal under Rule 41(b) is undoubtedly a "harsh sanction." *Ball v. City of Chicago*, 2 F.3d 752, 754 (7th Cir. 1993). But the Rule exists for a reason and must be observed when the circumstances call for it. When there's a "clear record of delay or contumacious conduct," a court may grant a Rule 41(b) dismissal. *Curtis-Joseph v. Richardson*, 417 F. App'x 570, 572 (7th Cir. 2011) (quoting *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003), *overruled on other grounds*). Relevant factors include "(1) the frequency and magnitude of the plaintiff's failure to comply with deadlines for the prosecution of the suit; (2) the apportionment of responsibility for those failures between the plaintiff and his counsel; (3) the effect of those failures on the judge's calendar and time; (4) the prejudice if any to the defendant caused by the plaintiff's dilatory conduct; (5) the probable merits of the suit; (6) and the consequences of dismissal for the social objectives of the type of litigation that the suit represents." *Aura Lamp & Lighting Inc.*, 325 F.3d 903, 908 (7th Cir. 2003) (citing *Ball*, 2 F.2d at 759–60) (citation modified, numbers added).

9

Before turning to those *Ball* factors, the Court highlights that it warned Koroll *three times* that she risked a Rule 41(b) dismissal. *See* dkt. 66 (June 5, 2023); dkt. 83 (January 31, 2024); dkt. 134 (July 7, 2025). The Seventh Circuit encourages judges to "warn" counsel before dismissing a case on Rule 41(b) grounds. *Ball*, 2 F.3d at 755. However, the court may punish "egregious misconduct" even without a warning. *Bolt v. Loy*, 227 F.3d 854, 586 (7th Cir. 2000); *Fischer v. Cingular Wireless, LLC*, 446 F.3d 663, 665 (7th Cir. 2006) ("explicit[ly] clarifying that a warning is not always required"). As the Record shows, Koroll's conduct likely meets the egregious misconduct standard, absolving the Court of the need to offer her *any* warning, let alone three. The Court's final, July 7 warning was clear and unambiguous. So, to the extent *Ball* requires a warning, Koroll certainly received a proper one(s). *See Harrington v. City of Chicago*, 433 F.3d 542, 545, 549 (7th Cir. 2006) (upholding Rule 41(b) dismissal where warning was provided seven months earlier).

*Frequency and Magnitude*: As the four pages of background show, in this case, delays and failures to comply with orders have been the rule, not the exception. Again, and again, and again, Koroll blew deadlines, usually without notifying either the Court or Defendant's counsel, despite the latter's diligent attempts to contact her. The Court pulls just one example: Despite already missing numerous deadlines, Koroll asked for a "final request" for an extension to file a summary judgment response. Dkt. 79. The Court generously granted it. Three months passed and Koroll filed nothing, forcing the Court to enter a *sua sponte* order to show cause why it shouldn't dismiss the case under Rule 41(b). That was in *January 2024*.

10

*Responsibility:* Courts are reluctant to punish a client for his attorney's violations. To that end, the Seventh Circuit generally encourages—but doesn't require—courts to sanction the attorney before resorting to a dismissal. *See Ball*, 227 F.3d at 758–59; *McMahan v. Deutsche Bank AG*, 892 F. 3d 926, 932 (7th Cir. 2018) ("There is no requirement to enter lesser sanctions before dismissing a case for lack of prosecution."). First, the Court notes that, according to his attorney, Tepp might share some blame for the delays. *See* dkt. 136 (settlement negotiations were "previously stalled when [Tepp] declined to move off his last number even despite an order to reissue a demand and despite the strong urging of his counsel."). Moreover, *Ball*'s recommended practice assumes that the court can "fashion an equally effective but less drastic remedy" than dismissal. *Ball*, 2 F.3d at 758. Koroll's conduct stretches back almost two decades. No number of public reprimands or warnings seem to inspire different behavior. Indeed, alternatives feel silly: Should the Court grant *one really, truly, but for real last extension*? And what then when Koroll misses that one? Dismissal is the only remedy.

*Effect on Court's Calendar and Time:* Nearing five-years old, this case has weighed down the Court's docket for too long. Over and over, the Court has been forced to reschedule hearings, adjust deadlines, respond to extension requests, and order rules to show cause. That's time the Court didn't spend on other matters. What's more, Koroll twice failed to appear at status hearings, without notifying the Court. That's not just unprofessional; it's contumacious. The Court and its staff

prepared for those conferences, only to waste more resources wondering whether Koroll would show.

*Prejudice to Defendant:* "Defendants are not second-class citizens." *Ball*, 2 F.3d at 759. A Rule 41(b) dismissal may be "essential" to protecting a defendant's interests. *Id.* "[I]n such cases, a less drastic sanction, far from being mandatory, may be a serious error." *Id.* The Court commends Defendant's counsel's patience and diligence throughout this lengthy ordeal. Well ahead of almost every deadline, Defendant's counsel repeatedly but unsuccessfully attempted to contact Koroll, even when it was her job to initiate discussions. When those efforts failed, Defendant timely and unilaterally adhered to Court orders, respectfully documenting Koroll's noncompliance. Though the "fact of being sued creates no presumption" that a defendant "in fact committed a wrong," a "protracted lawsuit ties up the defendant's time and prolongs the uncertainty and anxiety that are often the principal costs of being sued." *Id.* The Court has granted Koroll's motions for extension over Defendant's objection time and again. But no longer convinced that Koroll will chart a new course, the Court can't subject Defendant to further unwarranted prejudice.

The final two factors weigh little in this case: The Court won't evaluate the merits of Tepp's suit, beyond noting that the Complaint doesn't show irrefutable liability. And though this matter involves an alleged tort, a dismissal after almost five years of delays in a non-civil rights case is unlikely to have any consequences for the "social objectives" of tort litigation, especially when Defendant has shown a sincere willingness to resolve the dispute. *See id.* at 757, 60 (discussing the two public

policy goals of tort litigation, deterrence and compensation). *Ball* requires the Court to enter a Rule 41(b) dismissal.

The Seventh Circuit has also upheld Rule 41(b) dismissals on similar, if not less egregious, facts. *See Fischer*, 446 F.3d at 663 (*pro se* complaint with similar delays but less than a year after it was filed and without prior notice); *Schmidt v. Campanella Sand & Gravel Co., Inc.*, 49 F. App'x 647 (7th Cir. 2002) (dismissal after only three missed deadlines in less than a month); *Griffiths v. Eggmeyer*, No. 23-3253, 2025 U.S. App. LEXIS 13104 (7th Cir. May 29, 2025) (district court "certain[ly]" didn't abuse discretion where *pro se* plaintiff "ignored court-ordered deadlines, refused to cooperate with opposing counsel on scheduling, became virtually unreachable, and failed to appear at two hearings").

### B.    Rule 16(b)(4)

Koroll seeks one "final" extension. The Court now explains why it would deny that request, even if it hadn't warned of dismissal or promised no further extensions.

Koroll moved under Rule 6(b), but Rule 16(b)(4) is the proper vehicle. *See Experience Based Learning, Inc. v. Hanover Ins. Co.*, No. 17-cv-05133, 2019 U.S. Dist. LEXIS 105284, *13 (N.D. Ill. June 24, 2019) (explaining that Rule 16(b)(4) applies to extensions to scheduling orders because it's more specific than the "gap filler" provisions in Rule 6).[4] "A schedule may be modified *only* for good cause and with the judge's consent." Fed. R. Civ. P. R. 16(b)(1) (emphasis added).

---

[4] To the extent Rule 6 governs: Because Koroll fails the good cause requirement under Rule 16(b)(4), she necessarily fails the excusable neglect prong under Rule 6(b)(1)(B). *See McCann*, 2015 U.S. Dist. LEXIS 91362, at *31. And even assuming Koroll's evening filing was technically timely, the Court, under these circumstances, still wouldn't find good cause under Rule

"The primary consideration when making a good-cause determination is the diligence of the party seeking to extend the deadline." *Hanover Ins.*, 2019 U.S. Dist. LEXIS 105284, at *13 (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011)). "Lack of undue prejudice or surprise to the nonmoving party is insufficient to establish good cause under Rule 16(b)." *Downing v. Abbott Labs.*, No. 15-cv05921, 2017 U.S. Dist. LEXIS 168252, at *10 (N.D. Ill. Oct. 11, 2017). "Good cause" imposes a "heav[y]" burden, even more onerous than Rule 6(b)(1)(B)'s "excusable neglect" requirement." *McCann*, 2015 U.S. Dist. LEXIS 91362, at *31 (collecting cases). The movant bears the burden to establish its diligence under Rule 16. *Id.* at *33.

For all the reasons above, Koroll can't carry it. Moreover, though Koroll squeaked-in her request on July 31, her 7:34 p.m. filing evinces carelessness not diligence. It was Koroll's responsibility to initiate the final pretrial order, yet Defendant's Motion shows that she didn't contact its attorneys until 11:06 p.m. on July 30. *See* N.D. Ill. LCR 16.1 ("It shall be the duty of counsel for plaintiff to initiate [the Final Pretrial Order] meeting . . . . [which] shall be held sufficiently in advance"); *Id.* ("It is the obligation of counsel for plaintiff to prepare . . . a draft order for submission to opposing counsel."). Given the Record, the Court doubts whether she would have filed anything had Defendant not moved to dismiss earlier in the day. Finally, Koroll well understood the stakes and nevertheless acted without any urgency. The Court can't find good cause to further extend the deadline.

---

6(b)(1)(A), which isn't a high standard. *See McCann*, *McCann*, 2015 U.S. Dist. LEXIS 91362, at *20 (citing *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010)).

**Conclusion**

For the reasons above, the Court denies Tepp's motion for an extension [136]. It grants Defendant's Motion to dismiss under Rule 41(b) [135]. Though Rule 41(b) notes that the decision is presumptively "an adjudication on the merits," the Court doubly makes clear that it dismisses this action with prejudice.

Date: August 7, 2025          By: _____
                              Iain D. Johnston
                              United States District Judge